Craig W. ESSELSTROM,
Plaintiff–Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security *, Defendant–Appellee.

No. 94–35506.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 14, 1995.**

Decided Oct. 6, 1995.

* Pursuant to Public Law No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. In accordance with § 106(d), the Commissioner of Social Security should be substituted for the Secretary of Health and Human Services as the defendant in this action. No further action need be taken to continue this suit. *Id.*

** The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Federal Rule of Appellate Procedure 34(a).

Brent Wells, Johnson, Cram & Associates, Eugene, Oregon, for plaintiff-appellant.

James M. Miles, Assistant Regional Counsel, Department of Health and Human Services, Seattle, Washington, for defendant-appellee.

Before: SCHROEDER, REINHARDT, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Craig Esselstrom appeals the district court's order affirming the decision of the Secretary of Health & Human Services denying his application for disability insurance benefits under Title II of the Social Security Act. Esselstrom claims that he is disabled by schizophrenia. We reverse.

## BACKGROUND FACTS

Esselstrom, who was born in 1950, worked in a timber mill from 1974 to 1979, at which time he quit to attend college. Shortly thereafter, however, his mental condition began to deteriorate. His strange public behavior and self-destructiveness caused him to be hospitalized several times in 1981 and 1983. He was ultimately diagnosed as suffering from chronic undifferentiated schizophrenia, with some paranoid tendencies. Esselstrom is also apparently hindered by alcoholism.

Esselstrom applied for and was granted Title II disability benefits effective September 1984. With medication, his condition stabilized. In December 1985, he began working at a plywood mill. In July 1986, the Secretary determined that he was no longer disabled and terminated his benefits. In August 1991, Esselstrom was laid off from the mill. Others who were laid off at the same time have since been rehired, but not Esselstrom.

Esselstrom's relationship with his coworkers had begun to deteriorate shortly before he was laid off. He was also involved in a work-related accident at around that time, which may have been caused by his inability to concentrate.

For ten years, until mid–1992, when he was evicted on account of his drinking, Esselstrom lived in a group home with other individuals undergoing treatment for mental illness. The home did not have a great deal of structure, and he took care of most of his own daily needs, such as cooking and cleaning his room. However, the government concedes that the living arrangement qualified as highly supportive. At the time of the administrative hearing in late 1992, Esselstrom was again living in a group-home situation with other people taking medication to help their mental illness.

In December 1991, Esselstrom again applied for Title II disability benefits, alleging an onset date of August 22, 1991. The application was denied both initially and upon reconsideration on the ground that Esselstrom's condition does not meet or equal in severity a listed impairment. A hearing before an ALJ was held on December 2, 1992, and on January 29, 1993, he issued a decision denying the application. In February 1993, Esselstrom was again hospitalized because of his mental condition, this time for ten days. The ALJ's decision became final when the Appeals Council denied review on June 1, 1993. The district court affirmed the ALJ, and this appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291.

872

A district court's order upholding the Secretary's denial of benefits is reviewed de novo. *Travers v. Shalala*, 20 F.3d 993, 995–96 (9th Cir.1994). The decision of the Secretary must be affirmed if it is supported by substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir.1993). Substantial evidence, considering the entire record, is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.*

The Secretary's interpretation of the Social Security regulations is generally given great deference. *Mines v. Sullivan*, 981 F.2d 1068, 1070 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993). "This principle is not, however, absolute. A court need not accept an agency's interpretation of its own regulations if that interpretation is inconsistent with the wording of the regulation or inconsistent with the statute under which the regulations were promulgated." *Id.*

## DISCUSSION

The Social Security Act sets out a five-step process for determining the existence of a disability. "If it can be determined that a claimant is disabled or not disabled at any point in the review, that finding is made, and the review is ended." *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

Esselstrom challenges the Secretary's determination, at stage three of the review process, *see* 20 C.F.R. § 404.1520(d), that his impairment does not meet or equal any of the impairments listed in part 404, subpart P, appendix 1. He contends that his schizophrenia meets the severity of No. 12.03(C) in appendix 1. If so, that would create a conclusive, not a rebuttable, presumption that he was disabled under Title II of the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5, 107 S.Ct. 2287, 2291, 2294 n. 5, 96 L.Ed.2d 119 (1987).

In order to be presumptively disabled under No. 12.03(C), a claimant must show that he has a "[m]edically documented history of one or more episodes of acute symptoms, signs and functional limitations which at the time met the requirements in A and B of this listing, although these symptoms or signs are currently attenuated by medication or psychosocial support." In addition, he must show either (1) that he has undergone "[r]epeated episodes of deterioration or decompensation in situations which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms" *or* (2) that he has a "[d]ocumented current history of two or more years of inability to function outside of a highly supportive living situation." 20 C.F.R. pt. 404, subpt. P, App. 1, 12.03(C)(1), (2).

The ALJ found that Esselstrom could not satisfy any of the three component parts of No. 12.03(C). The Secretary concedes that Esselstrom has a "medically documented history of one or more episodes of acute symptoms, signs and functional limitations" sufficient to satisfy the first part of 12.03(C), and that only the two numbered components are in issue. Indeed, substantial evidence did not support the ALJ's contrary conclusion, given Esselstrom's history of hospitalization and of auditory hallucinations, even while he was working.

As to the first numbered component, 12.03(C)(1), in attempting to intuit the ALJ's theory of this case from his decidedly skimpy findings, the district court incorrectly interpreted the subsection and in doing so made it more difficult for Esselstrom to satisfy its requirements. In his report and recommendation, the magistrate judge stated that 12.03(C)(1) requires that a claimant show that he has had repeated episodes of deterioration or decompensation *in the workplace*. That is not accurate. Unlike other provisions in the regulation, 12.03(C)(1) does not require that the episodes of deterioration or decompensation take place "in work or work-like settings." Number 12.03(C)(1) places no restrictions of any kind on the sort of setting in which the episodes must have transpired.

The C category was included in 12.03 to recognize that "the prognosis of chronic schizophrenia may well include periods between acute bouts in which symptoms, while controlled enough to permit life outside an institution, still prevent the patient from

pursuing normal employment." *Pagan v. Bowen*, 862 F.2d 340, 343 (D.C.Cir.1988). Thus, 12.03(C)(1) enables a schizophrenic who is unable to work to so demonstrate by showing that in other comparable daily situations he is unable to deal with the presence of people and must withdraw. *Cf.* 56 Fed. Reg. 33130, 33132 (1991) ("We delete the reference to 'work or work-like settings' [from 12.00(C)] because episodes outside these settings are equally useful in deciding an individual's ability to work"). Esselstrom testified to apparently recent episodes of deterioration or decompensation that caused him to withdraw in surroundings other than the workplace. For example, he told the ALJ of wanting to kill former high school teachers whom he met on the street and of being practically unable to dine in a restaurant because of his inability to deal with the presence of other people. By failing to consider this evidence as it relates to 12.03(C)(1), the district court used a more restrictive standard than the regulations require.[1]

■ Esselstrom was also subjected to an improper construction of 12.03(C)(2). Esselstrom lived, for many years, in what the government agrees was a highly supportive living situation, and it appears that he must do so. The psychiatric experts so opined. The government urges that unless a claimant can show that he has actually spent two years in a nonfunctioning state on his own, he cannot satisfy 12.03(C)(2).[2] The district court recognized that this interpretation is unreasonable because it would require a schizophrenic to shun treatment and support for at least two years in order to qualify for benefits. As the district court said, "[h]e is not required to spend two years living on a street corner...."

■ However, the district court's application of 12.03(C)(2) to the evidence also missed the mark. Because Esselstrom drove, did his own shopping, prepared his own food, and performed other such daily tasks, the district court found that he could function outside of the support group with which he lived. But the evidence showed that he was able to do all of those things only precisely *because* he lived with a support group. Even the government agreed that "the District Court's analysis may be flawed, because it refers to Mr. Esselstrom's actual functioning, taking place *within* a highly supportive living situation, in order to support a conclusion that there exists, in effect, a current history of *capability* to function *outside* of such a living situation." Neither the ALJ nor the district court made any finding in regard to Esselstrom's ability to function outside his support group, even though psychiatric experts opined that he needed the support. In other words, the government agrees that it is wrong to hold that Esselstrom cannot meet the 12.03(C)(2) test on the theory used by the district court, and the district court is correct that the government's own theory for excluding him from 12.03(C)(2) is wrong. Thus, Esselstrom has been denied benefits on two incorrect bases. While no one has yet actually decided whether he *can* function without the highly supportive living situation that he was in, the government concedes that his living situation *was* highly supportive, and the medical expert saw that as necessary to his proper functioning.

## CONCLUSION

The district court described the ALJ's findings as "cursory" and this case as difficult. We agree with both characterizations. We do not think it unduly captious to point out that the case was made much more difficult because the measuring instruments were improperly calibrated. Using the correct instruments it is apparent that Esselstrom cannot function outside of the highly supportive living situation he was in for many years and it is at least likely that he has suffered

---

1. It is not clear what standard the ALJ used, because, as already noted, the ALJ's findings were cursory, but the district court's inference seems plausible. " '[A]n examiner's findings should be as comprehensive and analytical as feasible ... so that a reviewing court may know the basis for the decision.' " *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981) (citation omitted).

2. Once again, it is impossible to know for sure how the ALJ read 12.03(C)(2) because he made no findings specific to it, but we assume that the government represents the ALJ's position.

repeated episodes of deterioration, either at or away from a work or work-like setting.

All of that being so, there is no reason to require Esselstrom, who has waited for benefits for over four years, to continue to wait for benefits. On the contrary, the record bespeaks his disability. Thus, we exercise our discretion to order an award of benefits. *See, Erickson v. Shalala,* 9 F.3d 813, 819 (9th Cir.1993); *see also Penny v. Sullivan,* 2 F.3d 953, 959 (9th Cir.1993).

REVERSED and REMANDED to the district court with direction to enter judgment for Esselstrom.