112 F.3d 1064
 53 Soc.Sec.Rep.Ser. 269, Unempl.Ins.Rep. (CCH) P 15750B,
97 Cal. Daily Op. Serv. 3330,
97 Daily Journal D.A.R. 5761
Patsy JAMERSON, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner, Social Security
Administration, Defendant-Appellee.
 No. 95-17378.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1997.
Memorandum filed March 27, 1997.
Decided May 6, 1997.
 
 Edward M. Ober, Phoenix, Arizona, for plaintiff-appellant.
 Dennis J. Mulshine, Acting Chief Counsel, Region IX, United States Social Security Administration, San Francisco, California, for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona, Stephen M. McNamee, District Judge, Presiding. D.C. No. CV-95-00557-SMM.
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 ORDER
 The Memorandum disposition filed March 27, 1997 is redesignated as an authored Opinion by Judge Sneed.OPINION
 SNEED, Circuit Judge:
 
 
 1
 Appellant Patsy Jamerson applied for Supplemental Security Income ("SSI") on behalf of her son Patrick Jamerson ("claimant"). The Social Security Administration ("SSA") determined that claimant was not disabled, and hence was ineligible for SSI. After appellant exhausted her administrative remedies, she filed suit in federal district court against the Commissioner of Social Security ("Commissioner"). The district court granted summary judgment in favor of the Commissioner and we affirm.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 Claimant was born on August 17, 1985. He has a long and well-documented history of asthma. Apart from his respiratory problems, claimant is hampered by slow development of basic cognitive skills.
 
 
 3
 Claimant's mother filed an application for SSI on December 16, 1992, when claimant was in second grade. On March 10, 1993, "a multidisciplinary team including [a] speech/language pathologist, school nurse, and classroom teacher" concluded that claimant was ineligible for speech and language therapy. Nine days after the team performed its evaluation, claimant's second-grade teacher reported that "[h]e is below grade and is unable to do 2nd grade work." She also noted that he was spending ninety minutes per day in a special "resource room" for the learning disabled.
 
 
 4
 On April 5, 1993, Dr. Joseph Kirschvink, M.D., reviewed the available documentation and completed an "individualized functional assessment." Based partly on Dr. Kirschvink's assessment, the Social Security Administration concluded that claimant was not disabled. Appellant promptly requested reconsideration and, on June 1, 1993, Dr. Vernon Kores, M.D., completed another individualized functional assessment. Relying in part on Dr. Kores' assessment, the Social Security Administration once again notified claimant that he was ineligible for SSI. Appellant then sought a hearing before an Administrative Law Judge ("ALJ").
 
 
 5
 The ALJ considered yet another individualized functional assessment, this one completed by Ms. Lisa S. Harner. Ms. Harner is claimant's special education teacher. Unlike Doctors Kirschvink and Kores, who based their assessments on review of documentary evidence without directly observing claimant, Ms. Harner based her assessment on regular interaction with claimant over a two-year period. Ms. Harner's assessment concluded that appellant exhibited an "extreme" degree of limitation in cognitive function. However, the ALJ, in his decision dated September 22, 1994, stated that one of Ms. Harner's key conclusions was "not persuasive." Hence, the ALJ concluded that claimant was not disabled.
 
 
 6
 The Appeals Council denied appellant's request for review, prompting her to file a complaint in the U.S. District Court for the District of Arizona. The district court affirmed the Social Security Administration's denial of SSI benefits. Appellant timely appealed the decision of the district court. We have jurisdiction over this appeal under 28 U.S.C. § 1291.
 
 II.
 STANDARD OF REVIEW
 
 7
 Our review is governed by the recently amended 42 U.S.C. § 1382c(a)(3)(A), Personal Responsibility and Work Opportunity Act, Pub.L. No. 104-193, § 211, 110 Stat. 2105 (1996), redefining the standard for determining whether a child is eligible for disability benefits.[1] The new definition no longer compares the impairment to that which would disable an adult, but provides:
 
 
 8
 An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 9
 42 U.S.C. § 1382c(a)(3)(C)(i). The interim final rules, proposed by the SSA to guide implementation of the new legislation, do not become effective until April 14, 1997.[2] Childhood Disability Provisions, 62 Fed.Reg. 6408 (1997) (to be codified at 20 C.F.R. pt. 404). In the meantime, the SSA has issued emergency instructions indicating that "[a]ny case that would have been denied under the prior standard would also be denied under the new standard." SSA Emergency Teletype No. EM-96-131 § III(a)(5).
 
 
 10
 We defer to an agency's reasonable interpretation. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984) ("[Courts] have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer ....") (internal footnote omitted). We shall proceed to determine whether the claimant was properly denied benefits under the old law.
 
 
 11
 This panel reviews de novo a district court's order upholding the Commissioner's denial of benefits. Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir.1995). However, the panel may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Id.; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). "Substantial evidence" means more than a scintilla but less than a preponderance. Smolen, 80 F.3d at 1279. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten, 44 F.3d at 1457. If the evidence can reasonably support either affirming or reversing the Commissioner's decision, this panel may not substitute its judgment for that of the Commissioner. Id.
 
 III.
 ANALYSIS
 A. Ms. Harner's Assessment
 
 12
 Appellant contends that the ALJ erred, first, by placing too much weight on the opinions of two physicians who neither treated claimant nor personally examined him, and second, by placing too little weight on the opinion of Ms. Harner who interacted with claimant on a daily basis for two years. In disability cases, it is well settled that "more weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.' " Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir.1995) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)). Similarly, "greater weight is accorded to the opinion of an examining physician than a non-examining physician." Andrews, 53 F.3d at 1041. In cases where the opinion of a non-treating, non-examining physician contradicts the opinion of the treating physician, "the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id.
 
 
 13
 In the present case, there is no dispute that Drs. Kores and Kirschvink are non-treating, non-examining physicians. However, the litigants disagree about the status of Ms. Harner. Appellant, relying heavily on this court's decision in McAllister v. Sullivan, 888 F.2d 599 (9th Cir.1989), contends that Ms. Harner should be regarded as the equivalent of a treating physician. We disagree.
 
 
 14
 Our decision in McAllister is easily distinguished. In McAllister, the ALJ rejected the opinion of a treating psychologist. The psychologist, who had a Ph.D. but not an M.D., opined that McAllister was disabled. Id. at 602. A non-treating psychiatrist, who was an M.D., disagreed. We regarded the psychologist as the equivalent of a treating physician, and held that the ALJ could not disregard the psychologist's opinion unless he "set forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. (quotation omitted).
 
 
 15
 Unlike the psychologist in McAllister, there is no evidence that Ms. Harner holds a doctoral degree. Furthermore, the Social Security Administration's regulations explicitly list "licensed or certified psychologists" as "acceptable medical sources" for information related to disability claims. 20 C.F.R. § 404.1513(a). In contrast, the regulations do not list special education teachers, like Ms. Harner, as "acceptable medical sources." Id. Therefore, the ALJ did not err as a matter of law by refusing to consider Ms. Harner as the equivalent of a treating physician.[3]
 
 B. Substantial Evidence
 
 16
 As noted above, this panel can reverse the Commissioner's denial of benefits if "the Commissioner's decision ... is [not] supported by substantial evidence." Smolen, 80 F.3d at 1279. In addition to arguing that the ALJ accorded insufficient deference to Ms. Harner's views, appellant also contends that the Commissioner's decision is not supported by substantial evidence. Appellant argues that there is substantial evidence in the record that could support a finding of disability. But this panel "may not substitute its judgment for that of the [Commissioner]." Flaten, 44 F.3d at 1457. Thus, the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled. We hold that substantial evidence supports a finding that the claimant is not disabled.
 
 
 17
 First, Drs. Kirschvink and Kores both reviewed the available records and completed individualized functional assessments of claimant's impairments. Each doctor concluded independently that claimant's impairments are not of "comparable severity" to impairments that would render an adult disabled. Although both doctors are non-examining physicians, this court has held that "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews, 53 F.3d at 1041.
 
 
 18
 Second, claimant's grades in school constitute substantial evidence in support of the Commissioner's finding that claimant is not disabled. During first, second, and third grade, claimant did not receive a single grade that was either "failing" or "unsatisfactory." In the final quarter of third grade (the most recent grades included in the record), claimant's special education teacher gave him the equivalent of an "A" in math and spelling, a "B" in language, and a "C" in reading. Granted, these grades reflect a comparison to other children in the special education class, not the school as a whole. Even so, the ALJ was entitled to rely on this evidence, as he did, to support his conclusion that claimant's grades "do not correspond to an extreme limitation" in cognitive development.
 
 
 19
 Third, although claimant has required special education since first grade, his second-grade teacher reported that he spent only ninety minutes each day in the "resource room" (i.e., in special education). Otherwise, "[h]e participates in all regular education activities." As the ALJ found, claimant's ability to participate in the regular classroom programs constitutes substantial evidence that he can "function independently, appropriately, and effectively in an age-appropriate manner." 20 CFR § 416.924(f).
 
 
 20
 Under the old law, the Commissioner considered the claimant's "functional limitations" in six categories. The claimant was required to show either a "marked" limitation in one category and a "moderate" in another, or a "moderate" limitation in at least three categories. 20 C.F.R. § 416.924e(c)(2). To the extent that the new definition changes the requisite level of "functional limitation" to "marked or severe," it could reasonably be construed to be a more demanding standard. Accordingly, and because we have already determined that the ALJ's finding of nondisability is supported by substantial evidence under the old standard, we decline to interpret the precise effect of the new standard in advance of the impending rules. It is sufficient, for the purposes of this case, to recognize that it is a more stringent standard and that claimant has failed to establish a disability under a more forgiving, now superceded, definition.
 
 IV.
 CONCLUSION
 
 21
 We affirm the district court's decision and uphold the Commissioner's determination that claimant is not disabled, and therefore not entitled to SSI benefits.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The amended definition applies in all cases filed on or after, or finally adjudicated on or after August 22, 1996, the effective date. 42 U.S.C.A. § 1382c (West Supp.1996). No claim for benefits may be considered finally adjudicated if there is pending a request for either administrative or judicial review. Id
 
 
 [2]
 Although this court's decision was redesignated an authored opinion on May 6, 1997, it was originally filed on March 27, 1997, approximately two weeks prior to the effective date
 
 
 [3]
 In any event, the ALJ gave specific reasons, supported by substantial evidence, for rejecting Ms. Harner's views. The ALJ specifically rejected her finding that the limitation on claimant's cognitive development was "extreme." He said:
 [T]he identification of an extreme limitation is at odds with the claimant's ability to function in a regular classroom. Additionally, the grades received by the claimant while functioning in the regular classroom do not correspond to an extreme limitation. The undersigned therefore rejects the identification of an extreme limitation by Ms. Harner.