145 F.3d 1336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jimmy P. BLEVINS, Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant-Appellee.
 No. 97-16224.
D.C. No. CV-96-20540-JW.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 17, 1998.
Decided May 22, 1998.
 
 Appeal from the United States District Court for the Northern District of California James Ware, District Judge, Presiding.
 Before FLETCHER, D.W. NELSON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Jimmy P. Blevins seeks review of a decision by the Commissioner of the Social Security Administration to reject his applications for disability insurance and Supplementary Security Income benefits (collectively "disability benefits"). Blevins alleges that declining vision in his left eye, combined with a natal injury to his right eye, has left him unable to work. The district court upheld the Commissioner's decision to deny benefits, concluding that it was supported by substantial evidence. Blevins timely appeals to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 STANDARD OF REVIEW
 
 3
 We review de novo a district court's order upholding the Commissioner's denial of benefits. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.1997). Our review, however, is limited in scope. When reviewing factual determinations by the Commissioner, acting through the administrative law judge ("ALJ"), we affirm if substantial evidence supports the determinations. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 953, 136 L.Ed.2d 840 (1997). Substantial evidence is more than a mere scintilla but less than a preponderance. Jamerson, 112 F.3d at 1066. The Commissioner's interpretation of social security statutes or regulations is entitled to deference. Jamerson, 112 F.3d at 1066 (statute); Esselstrom v. Chater, 67 F.3d 869, 872 (9th Cir.1995) (regulations).
 
 ANALYSIS
 
 4
 I. There is substantial evidence in the record supporting the ALJ's determination that Blevins' visual impairment did not significantly erode his occupational base or prevent him from working.
 
 
 5
 Blevins argues first that his visual impairment prevents him from performing not only his past relevant work but also "any other types of jobs consistent with his vocational profile." The ALJ rejected this claim, determining that it was unsupported by the medical evaluations of Blevins' examining and consulting physicians. The ALJ also found Blevins' claim to be inconsistent with record evidence of Blevins' daily activities. See 20 C.F.R. § 404.1529(c)(3)(i) (informing applicants that daily activities considered in evaluating symptoms of disability).
 
 
 6
 The record supports the ALJ's determinations. As discussed further in Section II, below, Blevins' medical evaluations indicate that, at least in September 1993, the vision in his left eye was normal and his visual impairment was deemed unlikely to affect his employability. Moreover, Blevins' benefits application indicates that, despite his condition, he remained able to drive a car, visit friends, and do yard work on a regular basis. Aside from his bald assertion that he was unable to work, Blevins presented no evidence contradicting these findings. Accordingly, we conclude that the ALJ's decision was based upon substantial evidence. See Saelee, 94 F.3d at 521.
 
 
 7
 II. The ALJ did not err in declining to order a more comprehensive medical examination.
 
 
 8
 Blevins argues that the ALJ should have ordered another consultative examination of his vision in order to resolve alleged inconsistencies between the diagnoses of Dr. Richard Sogg, who had examined Blevins, and Dr. Richard Lieurance, an ophthalmological expert who reviewed Dr. Sogg's report and testified at Blevins' hearing. Specifically, Blevins calls attention to Lieurance's observation that Sogg's report says nothing regarding "any limitations of side vision or any visual field problems" resulting from Blevins' right eye impairment. Blevins also notes that Lieurance referred to Sogg's write-up as "incomplete." Blevins asserts that, in view of Lieurance's testimony, the ALJ was obliged to order another consultative examination in order fully to develop the record.
 
 
 9
 Although an additional medical examination may have established the severity of Blevins, visual impairment more conclusively, Blevins has not demonstrated that the evidence on which the ALJ did rely was insubstantial. See Saelee, 94 F.3d at 521. Contrary to Blevins, claim, there is no indication that Lieurance actually disagreed with any portion of Sogg's diagnosis. Although Lieurance did suggest that a more complete description of Blevins' right eye impairment would have been "very nice," he admitted that "it really isn't that significant for your evaluations." Similarly, while Lieurance noted that further medical examination could "be pertinent for [Blevins] to justify his claim that there's something wrong with his left eye," he found nothing in Soggs' report to suggest "any disease process at all in his [left] eye." Thus, there is no apparent inconsistency between the two physicians' medical evaluations.
 
 
 10
 In the absence of any inconsistency, it is unclear on what ground Blevins challenges the ALJ's decision. Dr. Sogg found no impairment to Blevins' left eye. Moreover, the ALJ found both doctors' reports to support his conclusion that Blevins' medical condition would not severely affect his employability. Blevins offers no medical evidence in rebuttal; he merely claims that another examination could lead to a different conclusion. In similar circumstances, we have hesitated to "second-guess[ ] the determination of the ALJ with regard to the credibility of the medical testimony offered or [to impose] burdensome procedural requirements that facilitate such second-guessing." Allen v. Heckler, 749 F.2d 577, 580 (9th Cir.1984). Without any clear indication that Dr. Sogg's examination provided insufficient support for the ALJ's findings, we decline Blevins' invitation to second-guess the ALJ's assessment of the medical evidence.
 
 
 11
 III. The ALJ did not err in declining to consult a vocational expert regarding Blevins' remaining job opportunities.
 
 
 12
 After assessing Blevins' visual impairment and his exertional limitations, the ALJ based Blevins' disability determination on a matrix ("the grids") adopted by the Department of Health and Human Services in 1978 to guide evaluation of disability claims. Blevins now argues that because he suffers from a severe non-exertional limitation--i.e., poor vision--the grids provide an imprecise measure of his vocational opportunities. Blevins asserts that the ALJ should have appointed a vocational expert to testify as to Blevins' job prospects in view of his particular impairment.
 
 
 13
 The resolution of this question turns on whether Blevins' vision problems "significantly" limit the types of employment for which he remains qualified. This Court has rejected application of the grids where "a claimant's nonexertional limitations are in themselves enough to limit his range of work." See Polny v. Bowen, 864 F.2d 661, 664 (9th Cir.1988); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.1988). At the same time, this Court has observed that an allegation of non-exertional limitations "does not automatically preclude application of the grids." Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 577 (9th Cir.1988); see also Razer v. Heckler, 785 F.2d 1426, 1430 (9th Cir.1986). Rather, "[t]he ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." Desrosiers, 846 F.2d at 577 (emphasis added).
 
 
 14
 In the instant case, the ALJ explicitly determined that Blevins, condition did not rise to that standard:
 
 
 15
 According to the medical expert, the claimant's eye condition causes problems with fine print and computers. These are the claimant's only nonexertional restrictions. I find that these nonexertional limitations do not substantially erode the occupational base of 2500 unskilled sedentary, light, and medium jobs which are within the claimant's exertional capabilities.
 
 
 16
 Because the ALJ turned to the grids only after determining that Blevins' nonexertional limitations would not significantly compromise his ability to perform the jobs in his skill category, the ALJ's decision is consistent with the standards articulated by this Court in Desrosiers and Polny.[1] Moreover, there is no evidence in the instant case to refute the ALJ's assessment regarding the severity of Blevins' nonexertional limitation.
 
 
 17
 Shifting outside of Ninth Circuit case law, Blevins cites a 1985 Social Security Administration policy statement in support of the proposition that, notwithstanding the availability of jobs within his skill level, Blevins' extremely adverse vocational profile justifies a finding of disability. See Social Security Ruling 85-15, Titles II and XVI--Capability to do Other Work--The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments ("SSR 85-15"), available in Westlaw, at 1985 WL 56857 (S.S.A.) (1985). We conclude, however, that Blevins' case does not present an "extremely adverse vocational profile" within the meaning of SSR 85-15. Among the characteristics comprising the profile is "approaching retirement age." At the time of the hearing before the ALJ in February 1995, Blevins was 54 years of age--six years short of "approaching retirement age," under the regulations' definition. See 20 C.F.R. § 404.1563(d). SSR 85-15 does not apply to Blevins' case. The ALJ did not err in finding that Blevins was not disabled.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Contrary to Blevins' assertions, there is not any inconsistency in the ALJ's finding that Blevins' visual impairment is "severe" and the ALJ's conclusion that the impairment does not significantly affect his capacity to perform a range of unskilled jobs. Under the regulatory scheme, the two inquiries are entirely separate and distinct. See 20 C.F.R § 404.1520. Moreover, SSA policy appears to endorse precisely the approach taken by the ALJ in this case. See Social Security Ruling ("SSR") 86-8, Program Policy Statement No. 123: Titles II and XVI--The Sequential Evaluation Process, available in Westlaw at 1986 WL 68636 (S.S.A.) (1986), superseded in part by SSR 91-7c (Aug. 1, 1991)