## Mary SMITH O/B/O Vanessa C. SMITH

v.

## Kenneth S. APFEL, Commissioner of Social Security.

### No. Civ.A. 99–0752.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Feb. 14, 2000.

Nina C. Coleman, Katherine M. Lary, Kisatchie Legal Services Corp., Natchitoches, LA, for plaintiff.

John A. Broadwell, U.S. Atty's Office, Shreveport, LA, for defendant.

### DECISION

LITTLE, Chief Judge.

Plaintiff Mary Smith ("plaintiff"), on behalf of her minor child, Vanessa Smith ("Vanessa"), seeks judicial review of the final decision rendered by the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's claim for supplemental security income (SSI) child benefits. For the reasons that follow, the court AFFIRMS the Commissioner's decision.

### I. Background

Vanessa was born prematurely on 9 May 1993 weighing only one pound and twelve

ounces. Mary Smith first filed an application for SSI for Vanessa on 2 December 1993 alleging disability as of 9 May 1993, by reason of low birth weight and developmental delays. This application was approved by the Commissioner on 16 February 1994. In April, 1995, plaintiff received notice from the Commissioner that Vanessa's disability had ceased and that benefits would be terminated as of June, 1995. After her application for reconsideration was denied, plaintiff requested a hearing on the matter, which was held before an Administrative Law Judge ("ALJ") on 12 November 1997. The ALJ denied benefits and determined that Vanessa was no longer eligible for SSI. The Appeals Council declined plaintiff's request for review of the ALJ's decision on 23 February 1999.

The plaintiff filed the instant petition for review in this court claiming that the Commissioner erred in denying her claim for SSI. The plaintiff asserts that the ALJ and the Appeals Council's findings of fact are not supported by substantial evidence. Plaintiff also contends that the Commissioner committed two errors of law: (1) in finding that Vanessa did not suffer from a listed impairment or combination of impairments that are functionally or medically equivalent to a listing; and (2) by failing to request the presence of a medical expert at plaintiff's hearing.

According to plaintiff, Vanessa suffers from cerebral palsy, asthma, exotropia,[1] seizures, mild aplasia,[2] and allergic diathesis.[3] Pl.'s Br. at 2. In addition, plaintiff asserts that Vanessa suffers from developmental delays, including a significant delay in auditory comprehension and verbal expression. *See id.* She also states that Vanessa has motor dysfunction and wears orthotics on her legs. Pl.'s Br. at 3. Vanessa receives physical therapy both in

---

1. Describes condition of being cross-eyed.

2. Mild aplasia is mild loss of sight.

3. Allergic diathesis is unusual susceptibility to external stimuli that causes certain diseases. Plaintiff states that as a result of this condition, Vanessa has been treated for otitis media, upper respiratory infections, rotavirus, bronchitis, chronic pneumonia, rhinitis, acute gastroenteritis, pharyngitis, milk intolerance, tonsilitis, gastroenteritis, and rashes. Pl.'s Br. at 2; Tr. 258.

school and at home to help stretch her Achilles tendons and hamstrings. Tr. at 260.

At the hearing, plaintiff admitted that, despite her low birth weight, Vanessa's height and weight were normal for her age. Tr. at 36. When questioned about Vanessa's schooling, plaintiff responded that Vanessa has been attending preschool, is "coming along pretty well," and is not having any identifiable problems. Tr. at 37. Plaintiff also commented that Vanessa seems to get along well with children and teacher at pre-school. Tr. at 38. In addition, Vanessa is able to play with stuffed animals, sit still in church, and sometimes attempts to sweep. *See id.*

As for her eyesight, Vanessa's extropia is improving, but her eyes still will need some work as they are not yet completely straight. So far, Vanessa has had three eye surgeries to correct this condition. Tr. at 47. As a result of her asthma, Vanessa has to use a breathing machine about three times a day for ten minutes. Tr. at 42. Because of her problems with motor coordination, Vanessa has trouble dressing and often needs help with fastening. Tr. at 39. At the hearing, plaintiff also noted that Vanessa's cerebral palsy affects all four limbs and that she often falls when trying to run, although she can walk well. Tr. at 40. Vanessa is able to use her hands and arms "with no problem." *Id.* As the ALJ noted in his decision, Vanessa has been seen numerous times at the Wise Clinic for Children for a host of ailments, including an upper respiratory infection, pharyngitis, asthma, bronchitis, otitis,[4] and pneumonia. Tr. at 20. At the time of the hearing, Vanessa was taking medicine for asthma and for allergies, and for fever when needed. Tr. at 42.

After the hearing and based on medical records submitted by the parties, the ALJ concluded that Vanessa did not have an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1, Subpart

P, Regulations No. 4. Tr. at 23–24. The ALJ determined that Vanessa's condition had improved since the time of her last favorable decision. Based on her individualized functional assessment, the ALJ found that Vanessa did not have an impairment that would disable an adult, and finally, that her disability had ceased as of April 1995. Tr. at 24.

In her complaint before this court, plaintiff contends that Vanessa's ailments show that her condition has not improved, and therefore she continues to suffer from multiple severe impairments that meet or equal a listing found in 20 C.F.R. Pt. 404, Subpt. P., App. 1. As the basis for her assertion of disability, plaintiff points to Listing 111.07(B)(3), Listing 111.07(A), Listing 111.06, and Listing 111.01. Plaintiff argues, in the alternative, that even if Vanessa does not meet any specific impairment, she does suffer from multiple severe impairments which are medically or functionally equivalent to a listing.

## II. Analysis

■ Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is restricted to whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were applied in evaluating the evidence. *See McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir.1999); *George v. Chater*, 76 F.3d 675, 676 (5th Cir.1996); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). The Supreme Court has defined substantial evidence as more than a "mere scintilla" and "less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). A finding is supported by substantial evidence if "it is sufficient for '[a] reasonable mind [to] accept as adequate to support a conclusion.'" *Selders*, 914 F.2d at 617 (quoting *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983)). A reviewing court may displace the Commis-

---

4. Inflammation of the ear.

sioner's determination only if no credible evidence exists to support the Commissioner's decision. *See Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir.1988). A claimant seeking disability insurance or social security benefits bears the initial burden of proving that he or she is disabled for purposes of the Social Security Act, 42 U.S.C. § 1381; *Fruge v. Harris,* 631 F.2d 1244, 1246 (1980).

## A. *Proper Legal Standard*

■ To qualify for SSI, a claimant must be disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which altered the eligibility standard for children under the SSI disability determination process. The 1996 Act applies to all disability applicants who filed claims for SSI on or after August 22, 1996, or whose cases were not finally adjudicated before that date. See Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir.1997). The legislation instructs the Commissioner to discontinue the use of the individualized functional assessment of children set forth in 20 C.F.R. §§ 416.924d and 416.924e, which contain the Commissioner's regulations governing disability claims by children. *See* Pub.L. No. 104–193, § 211(b)(1), (2).

The ALJ applied the regulations in place before the 1996 Act. Tr. at 18 ("[N]ew regulations were published in the Federal Register on February 11, 1991. Vanessa C. Smith's application is to be considered under these regulations."). Smith did not obtain a hearing prior to August 22, 1996. The ALJ therefore should have applied the 1996 Act, rather than the prior regulations in evaluating Smith's claim. This mistake does not, however, prove fatal. The Commissioner promulgated new regulations, effective April 14, 1997, while Vanessa's claim was still pending, to implement the changes required by the 1996 Act. In the new regulations, the Commissioner determined the new standard to be more stringent than its predecessor, and advised that any case that would have been denied un-

der the prior standard, would be denied under the new law. *See Walker v. Apfel,* 141 F.3d 852, 853 (8th Cir.1998); *Jamerson v. Chater,* 112 F.3d 1064, 1065–66 (9th Cir.1997) (citing 62 Fed.Reg. 6408 (Feb. 11, 1997)); *Sylvester v. Apfel,* No. Civ. A. 97–3510, 1999 WL 179471, *2 (E.D.La. Mar.31, 1999); *Hines v. Apfel,* No. Civ. A. 97–3030, 1998 WL 404799, at *3 (E.D.La. July 17, 1998).

Since courts are to defer to an agency's reasonable interpretation of a statutory scheme it is entitled to administer, see *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court will accept the Social Security Administration's interpretation of the 1996 Act. Accordingly, if the Commissioner properly denied the claim under the former, more lenient standard, there is no need to remand the matter to the Commissioner for evaluation under the new standard because the outcome will be the same. *See Walker,* 141 F.3d at 853; *Anderson v. Apfel,* No. Civ. A. 97–3447, 1999 WL 39518, at * 3 (E.D.La. Jan.29, 1999)). Therefore, we apply the older, less stringent, standard in reviewing Vanessa's case. *See Rucker v. Apfel,* 141 F.3d 1256, 1259 (8th Cir.1998).

Prior to the 1996 Act, the Commission followed a four-step process to assess whether a child is disabled. The ALJ considers (1) whether the child is engaged in substantial gainful activity; (2) if the child is not engaged in substantial gainful activity, whether the child's impairment or combination of impairments is severe; (3) if the child's impairment or combination of impairments is severe, whether the impairment meets or equals any impairment listed in Appendix 1, Subpart P, Part 404 of the regulations; and, (4) if the child's impairment or combination of impairments is severe, but does not meet or equal in severity any listed impairment, an individualized functional assessment ("IFA") is used to assess the impact of impairment on her overall ability to function independent-

ly, appropriately, and effectively in an age-appropriate manner, and to determine whether the impairment is of comparable severity to that which would prevent an adult from engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b)–(f) (1994).

### B. *ALJ's Analysis of Vanessa's Medical Condition*

■ Plaintiff disputes the ALJ's finding that Vanessa's medical condition improved as of April 1995 and does not meet any of the listing of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. Plaintiff first argues that Vanessa's severe developmental delays meet the criteria of Listing 111.07. In order to meet the criteria of Listing 111.07, the claimant must have cerebral palsy with:

(a) Motor dysfunction meeting the requirements of 111.06 or 101.3; or

(b) Less severe motor dysfunction (but more than slight) and one of the following

1. IQ of 70 or less; or

2. Seizure disorder, with at least one major motor seizure in the year prior to application; or

3. Significant interference with communication due to speech, hearing or visual defect; or

4. Significant emotional disorder

The medical evidence indicates that with eye glasses, Vanessa's vision is 20/40 OS and OD. Tr. at 323. This assessment shows that Vanessa has vision within the normal range. Plaintiff also bases her argument on Vanessa's speech difficulties. The medical evidence in the record contradicts plaintiff's contention. A 1996 report issued by the Natchitoches Parish School System's Pupil Assessment Services concluded that Vanessa had no observable impairment in speech fluency and that her articulation was intelligible to new listeners. Tr. at 255. Moreover, an examination at Shriner's Hospitals by Diane Honton, PT, revealed that Vanessa was "alert" and able to "follow commands, verbal and cooperative by means of sentences." Tr.

at 265. In sum, the administrative record indicates that Vanessa did not have a significant interference with communication due to speech. Thus, the ALJ's finding that Vanessa does not have an impairment which equals the criteria in Listing 111.07(B)(3) is supported by substantial record evidence.

■ Plaintiff also argues that Vanessa's impairments meet the standards in Listing 111.07(B)(2) because of Vanessa's recently manifested seizure disorder. The Commissioner contends, however, that the evidence of seizures should not be considered by this court since evidence of her disorder arose after the ALJ hearing. Plaintiff did not submit evidence of Vanessa's seizures to the ALJ because Vanessa did not show signs of a seizure disorder until her first episode in May 1998, and was not diagnosed by a doctor until September 1998. Tr. at 399. Plaintiff did provide evidence of Vanessa's seizures to the Appeals Council and the Appeals Council considered evidence regarding plaintiff's seizures disorder in deciding whether to review plaintiff's case, but ultimately determined that review was not warranted. Tr. at 5. " '[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision.' " *Brashears v. Apfel,* 73 F.Supp.2d 648 (W.D.La.1999) (citing *Cline v. Commissioner,* 96 F.3d 146, 148 (6th Cir. 1996)). Since the Appeals Council declined to review the ALJ's decision, it is clear that we may not consider the new evidence of Vanessa's seizure disorder.

■ Nonetheless, when new evidence becomes available after the ALJ's decision and there is a "reasonable probability that the new evidence would change the outcome," a remand is appropriate. *Ripley v. Chater,* 67 F.3d 552, 554 (5th Cir.1995). To warrant remand, the proffered evidence must be: (1) new and not merely

cumulative of what is already in the record, (2) material[5] and likely to change the outcome of the case, and (3) plaintiff must show good cause for failing to present the evidence earlier. *See* 42 U.S.C. § 405(g); *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985).

▮ The Commissioner argues that the evidence of Vanessa's seizure disorder is not relevant to the current claim for SSI. We agree. New evidence that concerns a subsequently acquired disability or deterioration of a condition that was not previously disabling should become the subject of a new application for disability benefits rather than justify a remand. *See, e.g., Leggett v. Chater,* 67 F.3d 558, 567 (5th Cir.1995) (rejecting request for remand when new evidence consisted of exams taken three years after the disability application was filed, and at least a year after the ALJ's decision). Here, plaintiff seeks to have this court review evidence of a condition that first revealed itself in May 1998, six months after the hearing before the ALJ. As Vanessa's seizure condition is a later-acquired disability disorder, we decline to consider the new evidence or remand the case to the Commissioner, and advise plaintiff that the proper course of action regarding Vanessa's alleged seizure disorder is to file a new claim for benefits.

Plaintiff also argues that Vanessa has a severe impairment that meets the criteria of Listing 111.07(A). This listing requires that Vanessa have cerebral palsy and meet the criteria for major motor dysfunction outlined in Listing 111.06 or 101.3. Here, plaintiff relies on Listing 111.06, which defines motor dysfunction as:

> Persistent disorganization or deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of:
>
> A. Fine and gross movements; or
>
> B. Gait and Station.

The evidence in the record indicates that Vanessa's difficulties in motor function do not interfere with her major motor activities. Vanessa wears leg orthotics to prevent her from walking on her toes because of tight heal cords. Tr. at 20. Despite her leg braces, Vanessa is able to stand, walk forwards and backwards, climb stairs, jump, knell and rise, climb, and walk on a balance beam. Tr. at 257. She is also able to ride a bike, open doors, and catch a medium-sized ball. *See id.* These skills placed Vanessa at or above the level of activity expected at her age level. *See id.* The record also shows that Vanessa's cerebral palsy did not cause severe limitations in her fine motor skills. When tested, her muscle tone was normal and her strength was adequate for functional needs. Tr. at 22, 256. Vanessa also had full trunk control, normal balance and coordination, normal range of movement and tone of both upper extremities, although a decreased range of movement in the lower extremities. Tr. at 22. The court's review of the reports relating to Vanessa's motor capabilities indicates that the ALJ's conclusion that Vanessa did not have severe motor dysfunction is amply supported by the medical evidence. Plaintiff has not shown that the ALJ was unreasonable in his determination that Vanessa did not have an impairment meeting the criteria in Listing 111.07(A).

In her second point of error, plaintiff asserts that the ALJ should have found that Vanessa's impairments are functionally equivalent to the requirements of a listed impairment. In the fourth sequential step under the pre–1996 regulations, where the child's impairment or combination of impairments is severe, but does not equal a listed impairment, the ALJ is to conduct an individualized functional assessment ("IFA") to determine whether the impairment is of comparable severity to that which would disable an adult. *See* 20 C.F.R. § 416.924d(a). At this stage, the

**5.** Evidence is considered material if has probative value and is relevant. *See Chaney v.*

*Schweiker,* 659 F.2d 676, 679 (5th Cir.1981).

ALJ assesses the impact of the impairments on the child's overall ability to function independently, appropriately and effectively in an age-appropriate manner. *See id.*

Children of Vanessa's age are evaluated in six different "domains": cognitive, communicative, motor, social, personal/ behavioral, and concentration. *See* 20 C.F.R. § 416.924d(g). Generally, a child is considered disabled if she is either markedly impaired in at least one other domain, or moderately impaired in three domains. *See* 20 C.F.R. § 416.924e(c)(2)(I) & (ii). An impairment results in a marked limitation of functioning if it is more than "moderate," but less than "extreme." 20 C.F.R. Pt. 404, Subpt P, App. 1, § 112.000(C) (incorporated through 20 C.F.R. § 416.924e(c)(2) A "marked impairment may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." *Id.*

Here, plaintiff argues that Vanessa suffers from marked and severe functional limitations in walking due to her cerebral palsy and asthma. Pl.'s Br. at 10. Plaintiff also contends that Vanessa has extreme limitations in her motor development as a result of her difficulty in walking. *See id.* The evidence in the record indicates, however, that Vanessa does not experience "marked" or "extreme" limitations in motor development. An evaluation by the Natchitoches Parish Schools' Pupil Appraisal Services indicated that Vanessa exhibited no delays in fine motor or self-care skills below that of her overall level of functioning. Tr. at 256. Vanessa had the ability to scribble, hold a pencil or crayon, build a tower of six blocks, and string together small beads. Tr. at 249. The appraisal also found that Vanessa had no delays in gross motor skills and tests revealed that she was able to run, walk up stairs, walk backwards, jump, climb, ride a tricycle, open doors, and catch a medium-sized ball. Tr. at 257. In sum, the appraisal showed that Vanessa exhibited no fine motor

problems nor gross motor delays. Tr. at 258. This evidence amply supports a finding that Vanessa did not have a "marked" or "severe" limitation in motor development.

Plaintiff also argues that Vanessa experiences a "marked" limitation in the domain of cognition/communication. Pl.Br. at 9. The 1996 assessment Natchitoches School Board did indicate that Vanessa experienced a nine-month delay in cognition and a ten to thirteen month delay in language. Tr. at 249. Nevertheless, the assessment showed that Vanessa has "no observable impairment" in speech fluency and that her articulation was intelligible to new listeners. Pl.Br. at 255. With the help of speech therapy, Vanessa was able to improve her verbal expression from one and two word sentences, to four word sentences. Tr. at 255, 335. In addition, plaintiff noted at the hearing that Vanessa's speech therapy classes were "working pretty well." Tr. at 37. Despite Vanessa's moderate delays in cognition and communication, the ALJ could reasonably have concluded that Vanessa did not have any marked or extreme limitations in the domain of cognition and communication, or in any other relevant domain. Accordingly, the ALJ's finding that Vanessa did not have any impairments functionally equivalent to any listed impairment is supported by substantial evidence.

██ Finally, plaintiff argues that the ALJ failed to consider Vanessa's alleged impairments in combination. It is well "settled that the Commissioner must analyze both the disabling effect of the claimant's ailments and the combined effect of the impairments." *Fraga v. Bowen,* 810 F.2d 1296, 1305 (5th Cir.1987). An ALJ's findings that multiple impairments do not render a claimant disabled will be upheld unless he "so fragmented" plaintiff's ailments that he failed to evaluate their combined effect. *Id.* After considering Vanessa's overall medical condition, including her cerebral palsy, asthma, respiratory conditions, eye surgeries, speech delays,

and gross motor skill difficulties, the ALJ concluded that Vanessa did not have a combination of debilities that equaled a listed impairment. Tr. at 19–23. The ALJ's recognition of each of Vanessa's limitations leads us to the conclusion that he properly considered Vanessa's impairments in combination and reasonably determined that Vanessa's ailments, both alone and in combination, did not meet the criteria of a listed impairment.

### C. Medical Testimony

In her final point of error, plaintiff argues that the ALJ erred in failing to obtain medical expert testimony at the hearing. As plaintiff correctly notes, however, the ALJ is not required to consult a medical expert and whether to do so is within his discretion. See 20 C.F.R. § 416.927(f)(2); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989). In this case, the ALJ had access to ample medical records and professional evaluations of Vanessa's case. It therefore was reasonable for the ALJ to forego consultation of a medical expert at the hearing.

### III. Conclusion

Because we agree with the ALJ's determination that Vanessa "is not disabled under the old, more lenient, standard," there is no reason for us to consider Vanessa's case under "the new, more stringent, standard." See *Walker*, 141 F.3d at 853. Although we sympathize with the challenges that Vanessa Smith must confront, plaintiff's briefs do not point to specific evidence in the record that refutes the ALJ's findings. Plaintiff makes conclusory statements regarding Vanessa's impairments, but does not point to medical records that affirmatively demonstrate that Vanessa meets the criteria to prove a severe impairment. Without such evidence, we are unable to conclude that the Commissioner erred in denying SSI benefits to plaintiff.

For the reasons stated above, we concluded that the ALJ's finding that Vanessa does not have any listed impairment and was not disabled is supported by substantial evidence and based on applicable law.

Accordingly, we AFFIRM the Commissioner's finding that plaintiff's eligibility for SSI ended in April, 1995.