**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>

EDWARD L. CAMPBELL,

      Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

      Defendant-Appellee.

</td><td>

No.   20-35114

D.C. No. 3:19-cv-05208-MLP

MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Washington
Michelle L. Peterson, Magistrate Judge, Presiding

Submitted March 19, 2021[**]
San Francisco, California

Before: MURGUIA and CHRISTEN, Circuit Judges, and LYNN,[***] District
Judge.

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

    [***]    The Honorable Barbara M. G. Lynn, Chief United States District
Judge for the Northern District of Texas, sitting by designation.

Plaintiff Edward Campbell appeals the district court's order affirming the Commissioner of Social Security's decision denying Campbell's application for Social Security disability benefits. We review de novo and set aside a denial of benefits only if it is unsupported by substantial evidence or the administrative law judge (ALJ) committed legal error. *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020). We have jurisdiction pursuant to 28 U.S.C. 1291 and we affirm. Because the parties are familiar with the facts, we recite only those necessary to resolve the arguments on appeal.

1.     Pursuant to the Social Security Act's recently amended implementing regulations, an ALJ "will not provide any analysis in [the] determination or decision about a decision made by any other governmental agency . . . about whether [a claimant is] disabled." 20 C.F.R. § 404.1504. But an ALJ must "consider all of the supporting evidence underlying the other governmental agency . . . decision[.]" *Id.* Campbell did not specifically or distinctly argue in his opening brief that § 404.1504 is invalid, and therefore we do not consider the argument to that effect raised in his reply brief. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)).

2

2.      Campbell argues the ALJ erred by failing to fully and fairly develop the record because the ALJ failed to obtain Campbell's VA disability ratings and their associated disability evaluations.  Assuming the ALJ erred by failing to obtain and consider the "QTC Medical Exam that was contracted out to Tacoma[,] Wa[shington] facility that was used to determine [Campbell's VA] disability," we conclude any such error was harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[W]e look at the record as a whole to determine whether the error alters the outcome of the case.").  Campbell testified that he "never went to VA very often" for treatment, but instead "went to TRICARE at Madigan."  The record before the ALJ contained nearly one thousand pages of medical records from Madigan Army Medical Center and other providers that span the period from 2005 to 2018.  Given Campbell's testimony and the medical evidence in the record, any error in failing to obtain the record from one additional medical examination was harmless, particularly because VA disability determinations are made on the basis of the cumulative medical record.  *See* 38 C.F.R. §§ 4.1 ("[A]ccurate and fully descriptive medical examinations are required"), 4.2 ("It is the responsibility of the [disability] rating specialist to interpret reports of examination in the light of the whole recorded history").

We also conclude the ALJ did not err by failing to specify the relevant time period for questions concerning Campbell's symptoms and daily activities. The ALJ asked both specific and open-ended questions about Campbell's abilities and limitations between the alleged onset date and Campbell's date last insured. The ALJ asked Campbell to describe "what a day in the life was . . . [s]tarting from [2009] on," and, after some back-and-forth, clarified that "[t]his is immediately after you retired, right . . . back in '09[?]" The ALJ also asked Campbell whether he sought employment during that time period. Accordingly, the ALJ did not fail to develop the record regarding Campbell's capabilities during the relevant time period.

3.     Campbell argues the ALJ failed to properly evaluate the medical evidence because the medical evidence supports his symptom testimony. Moreover, Campbell argues that an ALJ who evaluated the evidence as Campbell desires "could have reached a different disability determination." This overlooks that "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision,

the ALJ's conclusions must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Campbell has not shown the ALJ's interpretation of the medical evidence was not rational.

4. Next, Campbell argues the ALJ erred by discounting his subjective symptom testimony. An ALJ must complete a two-step analysis to determine whether a claimant's symptom testimony is credible. *Molina*, 674 F.3d at 1112. At step one, the ALJ determines whether the claimant presented "objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the [claimant's] pain or other symptoms alleged." *Id.* (citation and quotation marks omitted). At step two, if the ALJ finds no evidence of malingering, the ALJ may reject the claimant's symptom testimony by providing "specific, clear and convincing reasons" for doing so. *Id.* (citation and quotation marks omitted).

Here, the ALJ determined at step one that Campbell's medically determinable impairments could reasonably be expected to cause his symptoms. At step two, the ALJ discounted Campbell's testimony regarding the severity of his symptoms because his testimony was inconsistent with the objective medical evidence, his symptoms were well-controlled by conservative treatment, and no

treating, examining, or other medical source opined he was disabled during the relevant time period.

We conclude the ALJ provided sufficiently specific, clear and convincing reasons for discounting Campbell's testimony. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."). Objective medical evidence showed that in 2010, Campbell's pain was "mild" and did "not interfere with activity." Medical records from 2011 and 2012 showed similarly mild symptoms, with Campbell feeling "Very Good," experiencing "[n]o back pain," shoulder pain rated one out of ten, no shoulder numbness or tingling, and noting he could stand for four to six hours. In 2012 and 2013, medical records showed that pain medications "work[ed] quite well for [Campbell] without side effects," and his right shoulder pain was "[g]reatly resolved" following treatment of rest and medication. Though the lack of a medical opinion supporting Campbell's claimed disability might not suffice on its own to discount his testimony, we have upheld credibility determinations based in part upon an ALJ's finding that the claimant's testimony was "unsupported by . . . any persuasive reports of his doctors." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

5.     Campbell also argues the ALJ erred by discounting the testimony of two lay witnesses.  Lay witness testimony regarding a claimant's symptoms is "competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114.  Competent lay witness testimony "cannot be disregarded without comment," but an ALJ may discount the testimony by providing "reasons that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks and emphasis omitted).  Here, the ALJ rejected the lay witness testimony in part because it was "not consistent with the preponderance of the objective medical evidence[.]"  This is a germane reason for rejecting the testimony.

6.     Campbell's argument that the ALJ's Residual Functional Capacity (RFC) determination was erroneous is predicated on his arguments that the ALJ erred by discounting his testimony and the lay witness testimony.  Because we conclude the ALJ properly discounted that testimony, we conclude Campbell has not shown that the ALJ's RFC determination was not supported by substantial evidence.

7.     Finally, Campbell argues the ALJ failed to comply with Social Security Ruling 82-62, and therefore erred by concluding Campbell could perform his past relevant work as a personnel clerk.  We disagree.  The ALJ inquired into

Campbell's past relevant work with both Campbell and the vocational expert. The vocational expert testified that Campbell's past relevant work was equivalent to personnel clerk listed in section 209.362–026 of the Dictionary of Occupational Titles. The ALJ posed a hypothetical to the vocational expert that matched the ALJ's RFC finding, and the vocational expert testified that an individual with that RFC could perform the work of a personnel clerk as it is generally performed in the national economy. The ALJ's conclusion that Campbell could perform his past relevant work as a personnel clerk as it is generally performed in the national economy was supported by citation to the vocational expert's testimony and the Dictionary of Occupational Titles.

**AFFIRMED.**