226 F.Supp.2d 1040 (2002)
Mr. ROGERS, Plaintiff,
v.
Larry G. MASSANARI, Commissioner of Social Security, Defendant.
No. 4:01 CV 677 DDN.
United States District Court, E.D. Missouri, Eastern Division.
September 30, 2002.
*1041 Philip A. Senturia, St. Louis, MO, for Plaintiff.
Mr. Rogers, St. Louis, MO, Pro se.
Nicholas P. Llewellyn, Office of the U.S. Attorney, St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court upon the complaint of plaintiff Mr. Rogers for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying plaintiff Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by this United States Magistrate Judge under 28 U.S.C. § 636(c).
This action involves plaintiff's second application for SSI benefits based on disability. He first applied in June 1998. The application was denied upon initial consideration and plaintiff did not pursue further review.
The current application was filed in June 2000. The application was denied upon initial consideration. Without administrative reconsideration,[1] the claim was submitted to an Administrative Law Judge (ALJ), who conducted a hearing on February 1, 2001. Plaintiff represented himself at the hearing. On March 28, 2001, the ALJ ruled that plaintiff was not under a "disability" as that term is defined in the Act. (Tr. 6-11.) The decision of the ALJ is the final decision of the Commissioner and the subject of this judicial review.

Administrative record
On July 28, 1999, plaintiff was seen at the Veterans Administration (VA) Medical Center for foot pain. He admitted to poor compliance with his HIV medications due to active crack and alcohol use. (Tr. 151). The doctor described his HIV condition as asymptomatic. He was advised to continue his medications. (Tr. 152).
On March 1, 2000, plaintiff was seen for a regular appointment at the VA Medical Center. Plaintiff was "still using crack cocaine." He had no chest pain or shortness of breath. He had regular bowels and reported pain of "0" on a pain scale. Plaintiff's condition was described as "stable." (Tr. 157.) His CD4 count was 470.[2] Plaintiff had previously not kept his appointments *1042 and had missed taking his medications. A depression screen was administered. Plaintiff admitted to depression and a psychiatric follow-up was recommended. Plaintiff was informed about medication that could help (bupropion). (Tr. 155-61.)
On July 10, 2000, plaintiff was seen at the VA Medical Center for diarrhea, dizziness, and near fainting (syncope). The examiner reported that plaintiff had used the illicit drug Ecstasy, but was amenable to participating in a substance abuse program. (Tr. 163.)
On August 11, 2000, at the request of the state disability agency, plaintiff under-went a psychological consultative examination. Plaintiff reported that he had smoked crack cocaine since 1978, and that he smoked it "anytime [he could] get some" because he was depressed. He reported that he slept, made appointments for jobs which he did not keep, and went for walks. He was able to arrange transportation, ride the bus, perform his personal grooming, cook somewhat, grocery shop, make appointments, make change, and tell time. Plaintiff's thought process was lucid. Plaintiff described his mood as depressed and irritable. Plaintiff was messily dressed and groomed. His affect became increasingly angry, irritable, and argumentative as the evaluation progressed. Plaintiff eventually overturned a chair and stormed out, stating that the matters asked of him were pointless. (Tr. 200.)
In the written report, the examiner stated:
The client presents with depressive symptoms, labile[3] mood and acting out. However the etiology of these symptoms is difficult to determine as Mr. Rogers reports chronic and current cocaine usage. That is, it is not clear whether his reported symptoms are a result of his continued substance abuse or represent an independent mood disorder. Consequently only a diagnosis of Cocaine Dependence will be given at this time.
In light of the above, the following diagnoses are warranted:
AXIS I: 304.20 Cocaine Dependence
AXIS II: No diagnosis
AXIS III: HIV+, Hepatitis B, pancreas problems (by report)
(Id.)
The examination apparently was conducted by a "psychological trainee," Leonard Tate, M.S., who drafted the written report of the examination. Mr. Tate's name was signed on the report by a supervisory Ph.D. clinical psychologist who also countersigned the report. (Id.)
On August 29, 2000, David Bailey, Psy. D., a non-treating, non-examining psychologist, completed a Psychiatric Review Technique form for the state agency. (Tr. 204.) Dr. Bailey opined that plaintiff's psychiatric condition was non-severe. (Tr. 205.)
On June 7, 2000, plaintiff completed a disability report, alleging disability due to HIV, Hepatitis B, pancreas problems, and depression. (Tr. 106.) Plaintiff complained of easily becoming tired, being too weak to work, and having difficulty when given orders or under pressure. (Id.) Plaintiff was taking Prozac for his depression. (Tr. 111.)
On June 19, 2000, plaintiff completed a written claimant questionnaire. In it he described suffering from symptoms including pain, numbness and tingling, headaches, dizziness, irritability, night sweats, fatigue, diarrhea, restlessness, weakness, and blurred vision. (Tr. 124.) Plaintiff described side effects of his medications as including insomnia, pain, and tingling in *1043 his feet and fingers. (Id.) Plaintiff stated that he had a hard time remembering directions and that he was easily frustrated, and that he became nervous. (Tr. 125.) He stated he had a "give up" attitude. (Id.) He described decreased hygiene, sleep disturbance, and increased fatigue. (Id.) Plaintiff stated, "I am more suicidal than homicidal." (Tr. 127.)
At the evidentiary hearing before the ALJ, plaintiff submitted a medication list. (Tr. 137.) Plaintiff was taking medications for HIV, trouble breathing, diarrhea, pain, arthritis, depression, and to stop smoking. (Id.)
On June 7, 2000, a claims representative at a Social Security field office completed a disability report in which he noted that plaintiff was not very neatly dressed or groomed and had a poor memory. (Tr. 103-04.)
On June 19, 2000, plaintiff's case manager, Julia Gant, completed a Daily Activities Questionnaire in which she stated she had seen plaintiff weekly or as needed for the previous two months. Ms. Gant indicated that plaintiff complained to her of pain, shortness of breath, numbness in his hands and feet, fainting, blurred vision, and headaches. She also stated that she had no difficulty getting along with plaintiff and had never observed any unusual behaviors. (Tr. 123.)
In letters received by the ALJ on December 18 and 21, 2000, plaintiff described difficulty due to diarrhea, breathing problems, pain, problems remembering things, and weakness. Plaintiff stated that he contemplated suicide and thought he was schizophrenic. He stated that he served on the board of directors of a resident's association. This job took up "a lot of my time because of the amount of people in the downtown area who know me and seek my advise." (Tr. 139-40.)

Plaintiff's hearing testimony
At the hearing before the ALJ, plaintiff testified that all he could get were volunteer jobs. He had worked as a temporary employee two weeks prior to the hearing (Tr. 26.) Plaintiff testified that he was 44 years old and lived alone. (Tr. 24.) He had a bachelor's degree from the University of Missouri St. Louis, with a major in general studies. (Tr. 25.) Plaintiff was honorably discharged from the Air Force. (Tr. 26.) He engaged in periodic temporary work on an irregular basis in an attempt to pay his rent. (Tr. 26-27, 45.)
Plaintiff testified that he got his medical treatment and medications at the VA Medical Center. (Tr. 28.) He sometimes was unable to get to the doctor and would run out of medication. When he restarted the medication, his diarrhea got worse. (Tr. 39-40 44.) Plaintiff said he experienced dizziness and tingling from his medications. (Tr. 40.)
Plaintiff testified that he was able to work some days, but not others, because of exhaustion and pain. (Tr. 29, 45.) The people he worked with aggravated him. (Tr. 29.) He testified that he did other people's work and did not get along with supervisors, because they thought the other workers were going to plaintiff for advice. (Tr. 30-31.)
Plaintiff testified that he walked to Food Outreach for groceries. (Tr. 34.) Friends came to his house and helped with the cooking and the cleaning, although not every day. (Tr. 37.) Plaintiff testified that people asked him for advice on a daily basis. (Tr. 38.)
Plaintiff admitted to smoking crack cocaine in the past and stated that he did not drink alcohol anymore because his back hurts. "If my back didn't hurt I probably would." (Tr. 36.) Plaintiff stated that he had not had crack cocaine that morning *1044 and that he did not have any money to buy cocaine. When asked, he could not specify the last time he took cocaine. (Id.) Plaintiff stated that he had not used alcohol or drugs in a while, and that the VA Medical Center employee who noted ongoing drug use in July 2000 had not understood what plaintiff had said. (Tr. 43.)

Administrative Law Judge's decision
In his written opinion, the ALJ found:
1. Plaintiff had not engaged in substantial gainful activity since December 4, 1999, the alleged onset date of disability.
2. Plaintiff suffers from Human Immunodeficiency Virus infection and has a history of drug and alcohol use.
3. Plaintiff's impairments were "slight abnormalities that do not significantly affect the performance of any basic work activities." Plaintiff, therefore, does not have a severe impairment.
(Tr. 10.) Thus, at step two of the sequential analysis the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 11.)

DISCUSSION
The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole. In support of his complaint, plaintiff argues that the ALJ (1) failed to develop the record fully and fairly, and (2) erred in not finding that plaintiff suffered from a severe impairment. Plaintiff seeks a remand of this action to the Commissioner for a new hearing.

(1)
Plaintiff argues that the ALJ failed to fairly develop the record, because the Saint Louis University consultative mental status examination report on which he relied was not conducted by a qualified person and was unsigned. The court concludes that the ALJ should have further investigated the evaluation before the report was properly considered.
This evaluation was apparently drafted by Leonard Tate, M.S., a "psychological trainee." Putting aside the issue of the signature and assuming the circumstances were as otherwise indicated by the record, the report provided relevant expert medical information to the ALJ. Apparently the evaluation was supervised by, and the report was signed by, a Ph.D. clinical psychologist. (Tr. 201.) The evaluation was performed at Saint Louis University Psychological Services Center. (Tr. 199.) Contrary to plaintiff's argument, putting aside the signature issue, nothing in the record, besides the undefined term "trainee," indicates that the examination was performed by an unqualified individual. Rather, the report indicates that the evaluation was performed in an academic institution under the supervision of a Ph.D.-level clinical psychologist. (Tr. 199-201.)
Plaintiff's argument that the evaluation report was improperly considered because it was unsigned by Mr. Tate is, however, meritorious. The relevant Social Security regulation in effect when the ALJ filed his opinion provided:
All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable. *1045 See 20 C.F.R. § 416.919n(e) (2000) (emphasis added). The ALJ should have sought further information about the evaluation and the report to be assured of the report's genuineness.
Plaintiff argues that, even if the psychological evaluation report was genuine and valid, the examination was incomplete. Therefore, plaintiff argues, the ALJ had a "duty" to order a supplemental consultative examination. The court agrees.
While the examination terminated because plaintiff became belligerent and left the examination room, it is an open question whether or not, had plaintiff remained in the examination, the etiology ("continued substance abuse" or "an independent mood disorder") of plaintiff's symptoms ("depressive symptoms, labile mood and acting out") would have been determined during that evaluation. (Tr. 201.) Nevertheless, the report indicated the need for a supplemental evaluation.
The court appreciates defendant's argument that plaintiff's disruptive action seemingly allowed him to control the validity of this examination. Plaintiff terminated the examination by his refusal to cooperate. However, the record is unclear that this disruption was the reason the clinician was unable to determine the cause of plaintiff's symptoms.
If a claimant does not have a good reason for failing or refusing to take part in a consultative examination or test, the individual may be found "not disabled." See 20 C.F.R. § 416.918(a) (2000). However, the administrative record, including the rather contentious hearing before the ALJ, indicates that the cause of plaintiff's "depressive symptoms, labile mood and acting out" may in fact render him disabled under the Act, if the cause was other than cocaine dependence.
The ALJ is required to order medical examinations and tests, if the then-current administrative record does not provide sufficient medical evidence to determine whether the claimant is disabled. See 20 C.F.R. § 416.919a(b)(2000); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994). The record in this case is incomplete, as the psychological trainee indicated. The action will be remanded for further consideration of a supplemental psychological evaluation to determine the cause of plaintiff's psychological symptoms, including his "acting out." The ALJ on remand must decide whether any mental impairment found to exist is severe.

(2)
Plaintiff argues that the ALJ improperly found that he did not have a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a) (2000); see also Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir.1996).
Plaintiff argues that his HIV condition combined with the side effects of his medication "could be expected to cause" his alleged limitations. The court agrees with defendant that, other than any involvement or existence of a severe mental impairment, no substantial medical evidence showed that plaintiff's medications caused actual, and not just potential, side effects. Doctors at the VA Medical Center described his HIV condition as asymptomatic and stable. (Tr. 152, 157.) Although it appears that one healthcare provider recommended that plaintiff undergo a psychological referral, defendant incorrectly argues that the record indicates that plaintiff declined this offer. (Tr. 161.)
The ALJ properly noted that the use of drugs or alcohol is no longer a basis, per se, for an award of benefits. (Tr. 9.)

*1046 [A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.
42 U.S.C. § 1382c(a)(3)(J). However, drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease. See 20 C.F.R. § 416.935(b) (2000).
In plaintiff's case the ALJ specifically identified substance abuse as a non-severe impairment. (Tr. 9-10.) Defendant argues that plaintiff was properly found to be not disabled, even considering his drug and alcohol abuse. In this regard the ALJ found,
[m]entally, the claimant's basis abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress are not significantly impaired on a steady basis. There has been no serious deterioration in his personal hygiene or habits, effective intelligence, reality contact, thought processes, memory, speech, mood and affect, attention span, insight, judgment, or behavior patterns. At the hearing he displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance. He has no severe degree of depression, with or without substance abuse.
(Tr. 9.) These findings are not supported by substantial evidence. The opinion of a non-treating, non-examining state agency psychologist is generally not substantial evidence that plaintiff's mental condition is not severe. See Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir.2000). The administrative record, including plaintiff's missed doctor's appointments, missed taking prescribed medications, his disruption of the psychological evaluation, and his attitude during the evidentiary hearing before the ALJ, unequivocally indicate the possibility that plaintiff is severely mentally impaired and that this condition possibly is caused by other than substance abuse. These are questions indicated and unanswered by the psychological evaluation of August 11, 2000.
For these reasons, the decision of the Commissioner is reversed. The case is remanded under Sentence Four of 42 U.S.C. § 405(g) for a supplemental hearing which will include further consultative mental examination to determine plaintiff's mental condition, its severity under the Act, and, if relevant, its cause.
An appropriate Judgment Order is issued herewith.

JUDGMENT ORDER
In accordance with the Memorandum filed herewith.
IT IS HEREBY ORDERED that the decision of the defendant Commissioner of Social Security is reversed. The case is remanded under Sentence Four of 42 U.S.C. § 405(g) for a supplemental hearing which will include further consultative mental examination to determine plaintiff's mental condition, its severity under the Act, and, if relevant, its cause.
NOTES
[1] Missouri is one of several test states participating in modifications to the disability determination and appeals procedures which apply in this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and the Appeals Council review step. See id. Therefore, plaintiff's appeal in this case proceeded directly from his initial denial to the ALJ level. Finally, there was no Appeals Council review of the ALJ's decision.
[2] Defendant advises that individuals who have HIV infection or other disorders of the immune system may undergo tests to determine T-helper lymphocyte (CD4) count. The extent of immune depression correlates with the level or rate of decline of the CD4 count. While in general a reduced CD4 count (below 200) indicates that the susceptibility to opportunistic disease is increased, a reduced count alone does not establish a definitive diagnosis of HIV. See 20 C.F.R. ch. III, pt. 404, subpt. P, app. 1 § 14.OOD3aiii (2001).
[3] "Labile" means unsteady or unstable. Stedman's Medical Dictionary, 831 (25th ed.1990).