Tujaris BERGFELD, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CV–04–229–PHX–ROS.

United States District Court,
D. Arizona.

March 21, 2005.

Stephanie Elizabeth Lake, Law Offices of Stephanie Lake PC, Phoenix, AZ, for Plaintiff.

## ORDER

SILVER, District Judge.

Plaintiff Tujaris Bergfeld ("Bergfeld") challenges the Commissioner's denial of her application for Social Security benefits. She argues that the Commissioner erred in rejecting the opinion of her treating physician, disregarding the opinions of other treating sources, crediting an unsigned report from a consultative physician, and rejecting her testimony about the severity of her pain and physical and mental limitations. The Court agrees and remands for payment of benefits.[1]

## BACKGROUND

Bergfeld, a fifty-year-old woman, filed applications for disability insurance and supplemental security income on May 14, 2001, claiming disability as of March 31, 2000, based on her alleged inability to work due to chronic back pain; difficulty, standing, sitting or walking due to a fractured pelvis and right knee injury; gener-

alized weakness; shortness of breath; stomach problems; stress; headaches; and depression. (Pl.'s Statement of Facts ("PSOF") ¶ 1 [Doc. # 10].)

An administrative law judge ("ALJ") held a hearing on January 3, 2003, to determine whether Bergfeld was disabled and entitled to benefits under the Social Security Act. Bergfeld appeared and testified about her physical and mental limitations. (Administrative Record ("AR") at 32–52). The ALJ issued a "Notice of Decision—Unfavorable" on February 27, 2003. (AR at 19–29.) He found that while the objective medical evidence indicated physical and mental restrictions, Bergfeld retained the residual functional capacity to perform her past relevant work as a telephone sales representative. (*Id.*)

Bergfeld filed a request for review with the Appeals Council on March 7, 2003. (AR 17–18.) The request was denied on January 13, 2004. (AR 10–12.) Bergfeld commenced this action on February 2, 2004, seeking a reversal of the ALJ's decision.

## A. Medical Evidence

### 1. Physical Impairments

Bergfeld was riding in the bed of a pickup truck in Phoenix on March 30, 2000, when the truck was broadsided in an intersection. (PSOF ¶ 6.) She was thrown from the truck and suffered fractured ribs, a left pulmonary contusion, an anterior pneumothorax (a collection of air in the pleural space), complex pelvic fractures, knee injuries, blunt abdominal trauma, a splenic laceration with blood around the liver, and a lacerated kidney. (*Id.*)

---

1. The Court did not set this matter for oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.,* 171 F.3d 1197, 1200 (9th Cir. 1999), *modified,* No. 97–17298, 1999 U.S.App. LEXIS 8016; *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998).

Bergfeld received her initial treatment at John C. Lincoln Hospital as a level-one trauma patient. (*Id.*) Emergency room doctors inserted a chest tube, an arterial line in the right radial artery, and a naso-gastric tube. (*Id.*) They also gave her morphine for her pain. (*Id.*) Bergfeld had considerable trouble breathing because of her lung injuries. (*Id.*) Doctors were not able to treat her pelvic injury until her pulmonary condition improved. (*Id.*)

After almost two weeks in the hospital, Bergfeld's condition improved to the point where her pelvic injury could be treated. (*Id.* ¶ 11.) On April 12, 2000, Dr. John A. Soscia, an orthopedic surgeon, performed an open reduction and internal fixation of the pelvis. (*Id.*) Bergfeld was then trans-ferred for continuing care to the Bryans Extended Care Facility. (*Id.* ¶ 12.) She continued to suffer pain, and doctors told her to bear no weight for ten to fourteen weeks. (*Id.*) After her release from Bryans, Bergfeld temporarily moved to Pennsylvania to be cared for by her broth-er because she could not care for herself. (*Id.*)

While in Pennsylvania, Bergfeld was treated by physicians at the University of Pittsburgh. (PSOF ¶ 13.) She com-plained of weakness and pain in her left foot, hip, and lower back. (*Id.*) She also reported numbness from her hip to her knee. (*Id.*) Doctors prescribed her Vioxx for her pain. (*Id.*) One of Bergfeld's phy-sicians, Dr. Gary S. Gruen, commented that Bergfeld's injuries resulted in compli-cations including "accelerated arthritis of the hip, possible need for surgery, infec-tion, hardware failure." (*Id*) An X-ray of Bergfeld's hip taken in November 2000 revealed "[s]econdary degenerative changes" of the left hip. (*Id.* ¶ 14.)

From June 15, 2001 through May 2001, Bergfeld received treatment for pain in her hips, lower back, and other areas from Matthew R. Forman, a Pittsburgh chiro-practor. (*Id.* ¶ 15.) At her initial exami-nation, she reported pain at a level 10 on a scale of 1–10. (*Id.*) Forman's treatment included trigger point therapy, myofacial release, and massage. (*Id.*) This relieved some but not all of Bergfeld's pain. (*Id.*; AR 258–319.) On her last visit with For-man, on May 7, 2001, Bergfeld reported lumbar pain and hip pain at a level 2 on a scale of 1–10 and pain in the left buttock and down the left leg at a severity of 3 on a scale of 1–10. (AR 258–59.)

Bergfeld continued to suffer from short-ness of breath and was examined by Dr. Joel Weinberg in February 2001. (*Id.* ¶ 16.) A chest X-ray showed scarring from the hemopneumothorax, some eleva-tion of the diaphragm, and some coarse scarring in the left lower lung zone. (Ad-ministrative Record ("AR") at 247 [Doc. #.7A].) Dr. Weinberg described these symptoms as a "typical finding post hemo-thorax." (*Id.*) He recommended no fur-ther evaluation unless Bergfeld developed more symptoms. (*Id.*) He also cautioned Bergfeld to stop smoking. (*Id.*)

Bergfeld moved back to Phoenix in May or June of 2001. (AR 388.) On July 27, 2001, Dr. Keith Cunningham, a consulta-tive physician examined Bergfeld at the request of the Arizona Department of Eco-nomic Security ("ADEC"). (AR 338–340.) Although Cunningham did not sign his re-port, the ALJ gave it great weight. (AR 27.) Cunningham diagnosed status post pelvic fractures with subsequent surgery and noted that Bergfeld demonstrated lim-ited left hip rotations with an otherwise normal range of motion and gait. He re-marked that Bergfeld should avoid walking or standing for more than two hours at a time, but found that she could stand for a total of six hours in a workday, use her upper extremities, and lift up to twenty pounds. (AR 340.)

In late 2001, Bergfeld reported pain in her knee to her primary physician, Dr. Norman Rychlik. (PSOF ¶ 17.) An MRI dated December 13, 2001, revealed that Bergfeld had suffered a horizontal tear of the medial meniscus from the accident. (*Id.*) On January 14, 2002, Dr. P. Dean Cummings performed diagnostic and operative right knee arthroscopy. (*Id.* ¶ 19.) He noted that "the amount of cartilaginous damage that [Bergfeld] ha[d] . . . [was] severe" because she had " 'essentially bare bone' on the medial side of her joint space." (*Id.*)

On July 11, 2002, Dr. Rychlik completed a Physical Capacities Evaluation. (AR 484–86). He opined that Bergfeld could sit, stand, and walk for no more than one hour continuously and no more than two hours total in an eight-hour workday. (*Id.* at 484.) He also noted that she could occasionally lift no more than ten to twenty pounds; occasionally carry no more than six to ten pounds; and occasionally bend, crawl, and reach but never climb or squat. (*Id.*) Dr. Rychlik further found that Bergfeld suffered from fatigue and pain restricting her ability to function at the moderately severe to severe level.[2] (*Id.* at 485.) The ALJ rejected Dr. Rychlik's opinions, arguing among other things that Rychlik's evaluations were "not entirely consistent with the greater objective record . . . ." (AR 27.) He ultimately characterized Bergfeld's orthopedic restrictions as "relatively minor." (AR 26.)

## 2. Mental Impairments

Bergfeld began treatment for mental health problems at Terros Behavior Health Services ("Terros") in Phoenix in September 2001. (PSOF ¶ 22.) She complained that she had chronic pain, no energy, and was feeling down because of her injuries. (*Id.*) On initial intake, she was diagnosed with major depression with a Global Assessment of Functioning of forty, indicating a major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. (*Id.*) After a mental status examination, she was diagnosed with bipolar disorder. (*Id.*) She attended individual and group counseling and was prescribed Wellbutrin, Depakote, and Risperdol. (*Id.*)

On June 13, 2002, Mary Pinson ("Pinson"), a nurse practitioner, issued a note stating that Bergfeld was being treated at Terros for a mood disorder and was receiving counseling and medication. (*Id.* ¶ 24.) Pinson opined that it would be several months and likely a year before Bergfeld's condition stabilized. (*Id.*) She also said that she did not believe that Bergfeld was able to work. (*Id.*) The ALJ rejected Pinson's opinion because she is not a physician and because her opinion concerned the ultimate issue of disability. (AR 27.)

In October 2002, Daniel K. Watson, Ph. D., conducted a consultative psychological evaluation of Bergfeld at ADEC's request. (AR 488–96.) He noted that Bergfeld demonstrated a "fairly high level of anxiety" and that she "does appear to be experiencing significant psychological distress." (PSOF ¶ 26.) He diagnosed cyclothymia, which requires the presence of numerous periods of hypomanic symptoms and numerous periods with depressive symptoms that do not meet criteria for a major depressive episode. (*Id.*) Watkins opined that Bergfeld suffers from a slight restriction on her ability to make judgments on simple work-related decisions, a slight restriction on her ability to respond appropriately to changes in a routine work setting, and a moderate limitation on her

---

2. The evaluation form states that "moderately severe" means "an impairment which seriously affects ability to function." (AR 86.)

"Severe" means an "extreme impairment of ability to function." (AR 486.)

ability to respond appropriately to work pressures in a usual work setting and to maintain emotional stability. (AR 494–95.) He concluded that Bergfeld "is probably capable of coping with a low to moderate stress environment, but will have significant difficulty with more highly stressful work environments." (AR 493.)

On January 2, 2003, a nurse practitioner at Terros completed a Mental Impairment Report at the request of ADEC.[3] (AR 499–503.) The report noted that Bergfeld was hypomanic at her last visit on December 30, 2002, and opined that Bergfeld's ability to perform work-related activities was limited by difficulty focusing and concentrating, difficulty maintaining a routine due to impulsive behavior, poor judgment, a low frustration toleration, great difficulty sitting still for any length of time, and emotional mood wings. (AR 501.) The ALJ cited but did not discuss the Mental Impairment Report in his decision. He ultimately characterized Bergfeld's mental limitations as "mild." (AR 26.)

## B. Bergfeld's Testimony

Bergfeld testified she has pain in her hips, knee, and lower back. (PSOF ¶ 31.) She said that standing, walking, and light duties at home bring on the pain. (Id.) She explained that she can only walk ten yards before her legs and hips begin to hurt and can only stand for fifteen minutes before she has to sit and rest. (PSOF ¶ 28–30.) Bergfeld testified that she can sit for thirty minutes to an hour, but said that she has to constantly shift positions because it feels like she's sitting on "bone only." (Id. ¶ 30.) She said she takes medication to relieve the pain, but said that

getting off her feet in a lying position is the only thing that really works.

Bergfeld admitted that she shops for groceries, but said that doing so is "very difficult." (Id.) She said that she is able to cook and clean "to a degree," but can do "very little" housework and must stop and rest after activity. (AR 39.) Bergfeld testified that she cannot carry a laundry basket because of her pain; instead, she ties a rope around the basket and pulls it. (Id. at 44, 45.) She said that she can climb a flight of stairs, but only if she takes a break in between. (Id. at 42–43.)

Bergfeld testified that she made attempts to return to work as a part-time telemarketer and auto-glass worker. (PSOF ¶ 32.) She said that she lasted only one week in the telemarketing position and one day at the other job because she felt too much pressure and anxiety and was in too much pain to continue. (Id.) She explained that her pain caused her to feel irritable, which was not helpful for her telemarketing sales job. (Id.)

The ALJ found Bergfeld's testimony "less than fully credible" based on Bergfeld's "reported activities of daily living."[4] (AR 26.) He also argued that Dr. Forman's reports indicated that Bergfeld's pain had improved and was less limiting than she alleged. (Id.)

## DISCUSSION

### A. Standard of Review

"The claimant bears the burden of proving entitlement to disability benefits." *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir.1995). To qualify for disability insurance benefits under the Social Se-

---

3. The signature on the report is illegible.

4. The ALJ primarily based his conclusion on Dr. Watkins's report. Although Watkins did not evaluate Bergfeld's physical abilities, his

report notes that Bergfeld drove herself to the evaluation; cooks, shops, and does light cleaning; uses the telephone; and spends about four hours a day with reading and crafts. (AR 489.)

curity Act, a claimant must establish: "(1) that [she] is disabled within the meaning of the Social Security Act, i.e., that [she] was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment; (2) that [her] impairment(s) lasted for a continuous period of not less than 12 months; and (3) that [her] period of disability began while [she] was insured for disability insurance benefits." *Thomas v. Barnhart*, 278 F.3d 947, 954–55 (9th Cir. 2002) (internal citations and quotations omitted).

 A claimant is disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity; (2) that her disability is severe; and (3) that her impairment meets or equals one of the specific impairments described in the regulations. *Id.* at 955. If the claimant proves that she is unable to perform her past relevant work in addition to proving the first two requirements, then she has made a prima facie case of disability and "the burden shifts to the [Commissioner] to show that the claimant can engage in other types of substantial gainful work that exist in the national economy." *Andrews*, 53 F.3d at 1040.

 A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir.2001). A federal court " 'may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error.' " *Thomas*, 278 F.3d at 954 (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.1997)). " 'Substantial evidence means more than a mere scintilla but less than a preponderance.' " *Id.* (quoting *Jamerson*, 112 F.3d at 1066). It is " 'relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a

conclusion.' " *Id.* (quoting *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.1995)).

 To determine whether substantial evidence supports an ALJ's decision, the court must review the administrative record as a whole, considering both the evidence that supports and the evidence that detracts from the ALJ's conclusions. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld." *Thomas*, 278 F.3d at 954. This is because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

### B. Analysis

Bergfeld challenges the evidence relied on by the ALJ for his conclusion that Bergfeld was able to perform her past relevant work as a telemarketer. The Court will first review Bergfeld's evidentiary challenges and then discuss whether substantial evidence supports the ALJ's residual functional capacity analysis.

### 1. The ALJ Improperly Considered Dr. Cunningham's Opinion

 Dr. Cunningham conducted a consultative physical examination of Bergfeld in July 2001. In an unsigned report, he implied that Bergfeld can work full time, but stated that she should "avoid occupations involving prolonged walking or standing greater than two-hour intervals" and occupations involving standing for more than a total of six hours. (AR 340.) Bergfeld correctly argues that the ALJ erred by admitting this unsigned report in evidence.

Title 20 C.F.R. § 404.1519n requires all consultative examination reports to be personally reviewed and signed by the medical source who actually performed the examination. "This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results." *Id.*

Although no Ninth Circuit case has addressed the issue, cases in other jurisdictions have interpreted this regulation as preventing an ALJ from considering an unsigned medical report. *See Scott v. Shalala,* 898 F.Supp. 1238, 1251 (N.D.Ill. 1995) (holding that an ALJ cannot rely on an unsigned medical report from a consultative physician); *Rogers v. Massanari,* 226 F.Supp.2d 1040 (E.D.Mo.2002) (same). The Court finds no reason to disagree with these cases. The ALJ should not have considered Dr. Cunninghman's unsigned report.

## 2. The ALJ Did Not Give Clear and Convincing Reasons for Rejecting Dr. Rychlik's Opinions

Dr. Rychlik treated Bergfeld for leg and back pain and rendered an opinion concerning her functional capacity. According to Rychlik, Bergfeld cannot work full-time because she cannot sit, stand, or walk for more than one hour at a time and two hours total during an eight-hour day. Rychlik also noted that Bergfeld is limited by pain and fatigue at a moderately severe to severe level. The ALJ erred by failing to articulate clear and convincing reasons for rejecting Rychlik's opinions.

■■■■ Concerning the weight that an ALJ should give to a particular medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews* at 1040–41 (9th Cir.1995); *see* 20 C.F.R. § 416.927(d)(1), (2).

■■■■ Where the treating physician's medical opinion is uncontroverted, the ALJ must make specific findings stating "clear and convincing" reasons for rejecting it. *Id.; Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1298–99 (9th Cir.1999). Similarly, the ALJ cannot reject a treating physician's ultimate conclusions on disability without clear and convincing reasons. *Lester,* 81 F.3d at 830. This is because "[t]he treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to the [claimant's] functional capacities and limitations . . . ." *Id.* at 833.

■■■■ Even if a treating physician's opinion is controverted by a non-treating physician's opinion, the ALJ must still make findings setting forth " 'specific, legitimate reasons' supported by substantial evidence in the record" for rejecting it. *Id.* (quoting *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983)); *see Thomas,* 278 F.3d at 957. "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Thomas,* 278 F.3d at 957 (quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989)).

■■■■ Dr. Rychlik's opinion on the extent of Bergfeld's physical limitations is not controverted by any admissible medical source; thus, the ALJ was required to

provide clear and convincing reasons for rejecting it. None of the reasons identified by the ALJ meet this standard. The ALJ first stated that Rychlik's opinion was "not entirely consistent with the greater objective record." (AR 27.) A conclusory statement such as this does not constitute a sufficiently clear and specific reason for rejecting the opinion of a treating physician. *See Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir.1998) ("The ALJ must do more than offer his conclusions[;][h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir.1988) ("To say that medical opinions are not supported by sufficient objective findings ... does not achieve the level of specificity our prior cases have required ...."). The Commissioner's post-hoc justifications will not be considered: a reviewing court may affirm an administrative decision only on grounds articulated by the agency. *Vista Hill Found. v. Heckler,* 767 F.2d 556, 559 (9th Cir.1985).

▮▮▮ The ALJ next argued that Rychlik's opinion was inconsistent with Bergfeld's "own physical activities as she reported them." (AR 27.) Like the ALJ's first reason, this reason is insufficiently specific. If the ALJ was in fact implying that Bergfeld's daily activities—including cooking, light cleaning, watching television, and grocery shopping—show that she is not disabled, then, as discussed in Section B(4) below, this conclusion is not supported by substantial evidence. The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir.1984) (ordering award of benefits for constant leg and back pain despite claimant's ability to cook meals and wash dishes). Further, the ALJ mischaracterized the record. All of the activities cited by the ALJ to refute Bergfeld's allegations of disability in fact demonstrate the severity of Bergfeld's physical limitations. *See* Section B(4) *infra; Reddick,* 157 F.3d at 722 (refusing to accept ALJ's mischaracterizations of the record).

**3. The ALJ Ignored Critical Record Evidence of Bergfeld's Mental Impairments**

**a. The ALJ Wrongly Refused to Consider Pinson's Opinion**

Pinson, a nurse practitioner at Terros, opined that Bergfeld would not be able to work for several months and likely twelve months until her mental condition improved. The ALJ listed two reasons for giving "no weight" to Pinson's opinion: (1) Pinson is not a physician, and (2) she offered an opinion on the ultimate issue of disability.

▮▮▮ Pinson's evidence should have been considered even though she is not a physician. Title 20 C.F.R. § 404.1513(d)(1) lists nurse practitioners and therapists as medical sources who may provide opinions on an applicant's level of disability. ALJs are "not free to disregard the opinions of mental health providers simply because they are not doctors." *Duncan v. Barnhart,* 368 F.3d 820, 823 (8th Cir.2004). Further, the ALJ was not entitled to reject Pinson's opinion simply because she opined on an ultimate issue. Medical sources may provide "two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a claimant is capable of any work, given his or her limitations." *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).

▮▮▮ While Pinson's opinion is at odds with Dr. Watkin's opinion that Bergfeld "is probably capable of coping with a low to moderate stress environment" (AR 493),

Pinson is a treating medical source and the law requires the ALJ to provide "specific and legitimate" reasons for rejecting her opinion in favor of Dr. Watkins's. *See Smolen*, 80 F.3d at 1285. Neither of the ALJ's reasons for disregarding Pinson's opinion were legitimate. Absent such reasons, Pinson's opinion is entitled to significant weight. *See Andrews*, 53 F.3d at 1041.

**b. The Terros Records**

■ Although the ALJ found Bergfeld's mental limitations to be "mild," he failed to seriously discuss an important piece of evidence—the Terros Mental Capacity Evaluation. In a section entitled "Statement of Ability to Do Work–Related Mental Activities," the evaluation states, among other things, that Bergfeld has difficulty focusing and concentrating, difficulty maintaining a routine due to impulsive behavior, poor judgment caused by emotional mood swings, and a low frustration tolerance. The ALJ ignored these findings entirely.

The ALJ briefly cited the Terros evaluation at the end of his decision as evidence that Bergfeld was stabilized on medication. (AR 26.) The report's stabilization remark, however, occurs under sections entitled "hallucinations," "delusions," and "suicidal ideations" and speaks to those issues. (AR 500.) Even if the comment speaks to Bergfeld's overall condition, stabilization does not mean that Bergfeld's mental limitations have disappeared and will not recur; nor does it mean that the limitations are not disabling. *See Gude v. Sullivan*, 956 F.2d 791, 793 (8th Cir.1992) (notations of "in remission" and "stabilized," when read in context, failed to negate a finding of disability).

■ An ALJ may not rely on some portions of a report, while disregarding others. *Reddick*, 157 F.3d at 720 (noting that the agency must view the record as a whole and cannot parcel out a quantum of evidence here and there). *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a doctor's report] favorable to her position, while ignoring other parts, is improper."); *Smith v. Bowen*, 687 F.Supp. 902, 904 (S.D.N.Y.)("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion.")

**c. The Limitations Identified by Dr. Watkins**

Although the ALJ acknowledged in the body of his opinion that Dr. Watkins found moderate limitations on Bergfeld's ability to respond to work pressures, he failed to discuss this limitation in his residual functional capacity analysis. He also failed to acknowledge or discuss Dr. Watkins's finding of a moderate limitation on Bergfeld's ability to maintain emotional stability.

Indeed, the ALJ did not cite Dr. Wakins's report at all in support of his finding that Bergfeld's mental limitations were "mild." (AR 26.) The ALJ based his conclusion that Bergfeld's mental limitations were "mild" on the stabilization comment in the Terros report and on Bergfeld's report of her daily activities. The stabilization comment, as discussed above, was taken out of context. Further, Bergfeld's daily activities speak to her physical limitations rather than her mental limitations and in any event have a limited role in the disability analysis. *See* Section B(4), *infra; Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant "need not vegetate in a dark room" to be deemed eligible for disability benefits).

#### 4. The ALJ Improperly Rejected Bergfeld's Hearing Testimony

The ALJ did not articulate clear and convincing reasons for rejecting the credibility of Bergfeld's hearing testimony concerning her pain and other symptoms.

▮▮▮▮ "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormalit[y]' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997) (quoting 42 U.S.C. § 423(d)(5)(A)). "In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen*, 80 F.3d at 1281.[5]

▮▮▮ "Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment which would reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1281–82 (quoting *Bunnell*, 947 F.2d at 344). "The claimant need not produce objective medical evidence of the pain or [other symptoms], or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Id.* at 1281–82.

▮▮▮ "Once the claimant meets the *Cotton* test and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so." *Id.* at 1284. "The evidence upon which the ALJ

relies must be substantial." *Holohan*, 246 F.3d at 1208. In addition, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. This is so because "general findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208.

▮▮▮ Although "[a]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony, ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of the pain." *Light*, 119 F.3d at 792; *Cotton*, 799 F.2d at 1407 ("Excess pain is, by definition, pain that is unsupported by objective medical findings."). "The ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d at 958–59.

Bergfeld satisfied the *Cotton* test by providing objective medical evidence of various orthopedic injuries that are reasonably expected to produced pain. The ALJ makes no claim of affirmative evidence of malingering. Therefore, to reject Plaintiff's testimony the ALJ must cite to clear and convincing evidence. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Id.*

---

**5.** The *Cotton* analysis is a threshold test that the Ninth Circuit set forth in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986), and reaffirmed in *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.1991) (en banc). *See Smolen*, 80 F.3d at 1281.

■ The ALJ's reasons for rejecting Bergfeld's testimony were neither clear nor convincing. Instead, "[t]here is considerable evidence in the record that detracts from the ALJ's conclusions." *Reddick*, 157 F.3d at 723. The ALJ first argued that Bergfeld's report of her daily activities—"cooking, doing the dishes, performing minimal housekeeping duties, watching television, reading, receiving visitors, and shopping"—demonstrated that she has a greater level of ability than claimed. (AR 26.) Here, the ALJ did not simply weigh the evidence; he recharacterized it. Every aspect of Bergfeld's life relied on by the ALJ to refute Bergfeld's pain testimony was in fact offered to demonstrate the drastic accommodations her injuries have forced her to make.

For example, Bergfeld testified that she cooks, but only "to a degree." (AR 39). In her application for disability benefits, Bergfeld explained that she can cook and clean the kitchen, but only "in short intervals due to pain in [her] pelvis and lower back area." (AR 123.) And while Bergfeld said that she does some housecleaning, she also said that she must stop and rest after every activity. Again, in her application, Bergfeld explained that she needs assistance moving objects and that she can only vacuum for five minutes and then has to sit down and rest. (AR 39.) Bergfeld also testified that she goes to the store for groceries, but qualified her testimony by stating that she can only walk a few yards before she has to stop and rest. And while Bergfeld admits that she watches television, reads, and spends time doing crafts, she remarked she cannot do these

activities for more than fifteen minutes without having to lie down because of pelvic pain. Far from demonstrating that her limitations are less severe than she alleges, Bergfeld's account of her daily life is the story of a person attempting to function through severe pain.[6]

The Ninth Circuit has repeatedly stated that claimants "should not be penalized for attempting to lead normal lives in the face of their limitations." *See Reddick*, 157 F.3d at 722. This is because the ability to do limited household chores, interspersed with rest, does not demonstrate the ability to work eight hours a day, five days a week, where it might be impossible to periodically rest. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). Consequently, the ALJ must link the claimant's daily activities to the ability to perform full-time work when assessing residual functional capacity. *Wainwright v. Sec'y of Health and Human Servcs.*, 939 F.2d 680, 682 (9th Cir.2001). The ALJ made no attempt to do so here.

In addition to referring to Bergfeld's daily activities, the ALJ also argued that "[Bergfeld's] pain has improved with treatment since her alleged onset date and is less limiting than the she alleges, undermining her credibility." (AR 26). While Dr. Forman's notes do indicate that Bergfeld rated her pain at around a level 3 on a scale of 1–10 in May 2001 (down from 10 on a scale of 1–10 in June 2000), these notes must be read in the overall context of the record. Dr. Forman did not treat Bergfeld after May 2001. Later, in July 2002, Dr. Rychlik, Bergfeld's treating phy-

---

6. None of the information contained in Dr. Watkins's report clearly and convincingly contradicts Bergfeld's testimony. Watkins noted that Bergfeld drove herself to the evaluation; cooks, cleans, and performs light housekeeping duties; and spends time doing crafts. Bergfeld herself admits to these activities; however, her testimony and application indicate that her ability to perform them is severely limited. Dr. Watkins evaluated Bergfeld's mental health, not her physical abilities. The fact that his report does not provide the same level of detail as Bergfeld's testimony does not clearly and convincingly undermine Bergfeld's credibility.

sician, rated Bergfeld's pain as moderately severe to severe. The ALJ failed to discuss, let alone offer, any reason for discrediting Dr. Rychlik's assessment of Bergfeld's pain.

Because they were taken out of context, the alleged improvements cited by the ALJ do not constitute a clear and convincing reason for disregarding Bergfeld's testimony regarding her pain. *See generally Rodriguez v. Bowen,* 876 F.2d 759 (9th Cir.1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding [the treating physician's] opinion. No physician opined that any improvement would allow Rodriguez to return to work"); *Holohan,* 246 F.3d at 1205 ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Gude,* 956 F.2d at 793 (notations of "in remission" and "stabilized," when read in context, fail to negate a finding of an underlying disability); *see also Reddick,* 157 F.3d at 724 (explaining that a report of improvement by a claimant "is unlikely behavior for a person intent on overstating the severity of her ailments.").

Bergfeld produced objective medical evidence of injuries likely to cause pain; the ALJ failed to provide clear and convincing reasons for rejecting Bergfeld's testimony regarding the severity of her symptoms.

## 5. Remand

 Given the evidentiary errors described above, the ALJ's conclusion that Bergfeld is capable of performing full-time work is not supported by substantial evidence. The ALJ's conclusion was premised almost exclusively on the inadmissible report of Dr. Cunningham and on the ALJ's mischaracterization of Bergfeld's daily activities. Further, the ALJ improperly disregarded Dr. Rychlik's opinion that

Bergfeld's was unable to sit, stand, or walk for more than two hours in an eight-hour workday, Rychlik's characterization of the limitations caused by Bergfeld's pain as moderately severe to severe, and Bergfeld's own testimony about the extent of her pain. He also erroneously failed to consider Pinson's report and failed to address other critical evidence of Bergfeld's mental limitations.

 The question is thus whether to remand for further administrative proceedings or simply for payment of benefits. "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court] credit[s] that opinion 'as a matter of law.'" *Lester,* 81 F.3d at 834 (quoting *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989)). "Similarly, where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, '[the Court] will not remand solely to allow the ALJ to make specific findings regarding that testimony.'" *Varney v. Sec'y of Health and Human Serves.,* 859 F.2d 1396, 1401 (9th Cir.1988). Instead, the Court also credits that testimony as a matter of law. *Id.*

If Rychlik's opinion and Bergfeld's testimony are credited, then on the basis of this evidence alone Bergfeld must be found to lack the residual functional capacity for any work, including sedentary work. Because the evidence, when it is given the effect required by law, demonstrates that Bergfeld is disabled, the Court remands for payment of benefits.

Accordingly,

**IT IS ORDERED** that Plaintiff Tujaris Bergfeld's Motion for Summary Judgment [Doc. # 8–1] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Jo Anne B. Barnhart's Motion for

Summary Judgment [Doc. # 11–1] is **DE-NIED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Social Security Administration for payment of benefits.